UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMASA MARTINEZ GARCIA, as
Personal Representative for the
ESTATE OF FRANCISCO JAVIER
MENDEZ MARTINEZ, Deceased,

    Plaintiff,

v.                                                                          Case No.  1:11-CV-1010

YANKEE SPRINGS DAIRY, INC.                              HON. GORDON J. QUIST
and PAUL JAY LETTINGA,
jointly and severally,

    Defendants.
                                    /

## **OPINION**

Plaintiff, Tomasa Martinez Garcia, as Personal Representative for the Estate of Francisco Javier Mendez Martinez, deceased, has sued Defendants, Yankee Springs Dairy, Inc. and Paul Jay Lettinga, alleging claims of negligence (Count I) and intentional tort under the exception to the exclusive remedy provision of the Michigan Worker's Disability and Compensation Act, M.C.L.A. § 418.131(1) (Count II).  Both claims arise out Martinez's death.  Garcia invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, alleging that Martinez was a citizen of Mexico domiciled in Michigan and Defendants are citizens of Michigan.  (1st Am. Compl. ¶¶ 3-8.)

Defendants move to dismiss both counts of Garcia's first amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Defendants further contend that Garcia fails to allege any claim against Defendant Lettinga.  For the following reasons, the Court will deny Defendants' motion in its entirety.[1]

---

[1] Garcia requested oral argument on the motion.  After reviewing the parties' submissions, however, the Court concludes that oral argument is not necessary to an informed decision on the motion.

I. FACTS

The following facts are taken from Garcia's first amended complaint.

At all relevant times Martinez was a citizen of Mexico, domiciled in Michigan, and was not admitted to the United States for permanent residence. (1st Am. Compl. ¶ 3.) Yankee Springs is a Michigan corporation with its principal place of business in Michigan, and Lettinga is a Michigan citizen. (*Id.* ¶¶ 5, 7.) Lettinga was and is an owner and agent of Yankee Springs. (*Id.* ¶ 12.)

Martinez became employed by Yankee Springs as a farm worker on June 15, 2010. (*Id.* ¶ 13.) On July 12, 2010, Lettinga ordered Martinez and a co-worker, Victor Perez, to clean the inside and outside of two six foot by eight foot polyurethane tanks, which had been used to store liquid feed supplement made of an organic mixture containing molasses. (*Id.* ¶¶ 14, 17.) The only opening in the tanks for ventilation was the small hatch at the top of the tank, through which Martinez and Perez were to enter and exit. (*Id.* ¶ 16.) Several inches of the liquid feed supplement remained in the tanks and had been exposed to moisture and heat for a long period of time, causing the liquid supplement to decompose and ferment and emit noxious and/or oxygen competing gases. (*Id.* ¶ 15.) Lettinga did not provide Martinez with any protective equipment, did not train him about safety procedures for working in confined spaces containing oxygen-depleting gases, and did not warn Martinez about the dangers of working in such spaces. (*Id.* ¶ 9.)

After entering the tanks, Martinez and Perez informed Lettinga about the conditions inside the tanks. In response, Lettinga instructed them to take turns going inside the tanks. (*Id.* ¶ 20.) Later that day, Martinez and Perez were both found unconscious and unresponsive, lying face down in the brown liquid inside one of the tanks. Both men were pronounced dead shortly thereafter. (*Id.* ¶ 21.) The Medical Examiner's investigation reported the cause of death as asphyxia due to

entrapment in an oxygen-depleted environment. (*Id.* ¶ 22.) Subsequent testing of Martinez's blood sample indicated that he had been exposed to hydrogen sulfide. (*Id.* ¶ 23.)

## II. Discussion

### A. Subject Matter Jurisdiction

Defendants cite Rule 12(b)(1) as one basis for their motion but do not specifically request that the Court dismiss the first amended complaint for lack of subject matter jurisdiction. Defendants merely state that "[t]he allegations of domicile conflict with the diversity requirement" and note that Garcia bears the burden of establishing jurisdiction. (Defs.' Mot. ¶ 5.) Similarly, Defendants state in their brief that "[i]t is for the Plaintiff to . . . demonstrate that diversity jurisdiction properly exists and that this Court has subject matter jurisdiction." (Defs.' Br. Supp. at 9.)

To the extent Defendants are actually moving to dismiss for lack of subject matter jurisdiction, it is a facial attack limited to the allegations in the first amended complaint. *See Gentek Bldg. Prods. v. Steel Peel Litig. Trust*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.3d 320, 325 (6th Cir. 1990)).

> A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6). If those allegations establish federal claims, jurisdiction exists.

*Id.* (citations omitted). When the defendant moves to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving jurisdiction. *Wisecarver v. Moore*, 489 F.3d 747, 749 (6th Cir. 2007).

Garcia has met her burden. Federal courts' diversity jurisdiction is governed, in part, by 28 U.S.C. § 1332(a), which provides:

3

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –
> > (1) citizens of different States;
> > (2) citizens of a State and citizens or subjects of a foreign state;
> > (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
> > (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.
>
> For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

28 U.S.C. § 1332(a). Garcia, as the Personal Representative for Martinez's estate, has the same citizenship as Martinez. 28 U.S.C. § 1332(c)(2). Garcia alleges that Defendants are citizens of Michigan and Martinez was a citizen of Mexico who was not admitted to the United States as a permanent resident. This is sufficient to show that this case is between diverse parties. *See Mejia v. Barile*, 485 F. Supp. 2d 364, 366 (S.D.N.Y. 2007) (noting that "courts have consistently construed [the permanent residence provision] as applying only to those aliens who have been formally granted permanent residence within this country"). The fact that Martinez was domiciled in Michigan at the time of his death is irrelevant. *See Awah v. Best Buy Stores*, No. DKC-10-2748, 2010 WL 4963014, at *2 (D. Md. Nov. 30, 2010) (stating that "foreign nationals not admitted by the United States Citizenship and Immigration Services ('USCIS') as permanent residents are not 'citizens' of their state of domicile, no matter how long there they live").

**B.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

4

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

### *Negligence Claim*

In connection with her negligence claim in Count I, Garcia alleges that Martinez was not covered by Michigan's Worker's Disability Compensation Act (WDCA), M.C.L.A. § 418.101, *et seq.*, because Yankee Springs was an agricultural employer exempt from the WDCA and Martinez was not an employee included under M.C.L.A. § 418.115(d) or (e). Thus, Garcia alleges, Martinez has no exclusive remedy under the WDCA. Defendants argue that Garcia's contention that Martinez was excluded from coverage under the WDCA is based on an erroneous reading of M.C.L.A. § 418.115(d). The Court disagrees.

For purposes of the instant motion, Defendants do not dispute that Yankee Springs was an agricultural employer under the WDCA. With respect to agricultural employers, section 115 of the WDCA provides, in relevant part:

This act shall apply to:

> (a) All private employers, other than agricultural employers, who regularly employ 3 or more employers at 1 time.
>
> . . . .
>
> (d) All agricultural employers of 3 or more regular employees paid hourly wages or salaries, and not paid on a piecework basis, who are employed 35 or more hours per week by that same employer for 13 or more consecutive weeks during the preceding 52 weeks. Coverage shall apply only to such regularly employed employees. . . .
>
> (e) All agricultural employers of 1 or more employees who are employed 35 or more hours per week by that same employer for 5 or more consecutive weeks shall provide for such employees, in accordance with rules established by the director, medical and hospital coverage as set forth in section 315 for all personal injuries arising out of and in the course of employment suffered by such employees not otherwise covered by this act. The provision of such medical and hospital coverage shall not affect any rights of recovery that an employee would otherwise have against an agricultural employer and such right of recovery shall be subject to any defense the agricultural employer might otherwise have. . . .
>
> All other agricultural employers not included in subdivisions (d) and (e) shall be exempt from the provisions of this act.

M.C.L.A. § 418.115.

Garcia alleges that at the time of his death Martinez had been employed by Yankee Springs for only 3 weeks and 6 days, which is less than the 13 consecutive weeks required for an agricultural employer to provide full worker's compensation coverage under § 418.115(d) and less than the 5 consecutive weeks required for an agricultural employer to provide only medical coverage under § 418.115(d). Garcia alleges that because Yankee Springs was not included in subdivisions (d) and (e), Martinez had no right to recover worker's compensation benefits and thus was not subject to the WDCA's exclusive remedy provision set forth in section 131, M.C.L.A. § 418.131(1). *See Pallarito v. Vore*, 164 Mich. App. 650, 654, 417 N.W.2d 567, 569 (1987) ("The applicability of the exclusive remedy provision [of the WDCA] turns not upon the characterization of the asserted cause of action, but upon whether the employee has a right to recover benefits under the act.").

The discrete issue Defendants raise is whether Garcia has sufficiently alleged that Martinez was excluded from the WDCA under subsection (d) of section 115. Defendants contend that Garcia has not done so because she failed to allege that Martinez was "paid on a piecework basis." The relevant language of subdivision (d), set forth above, states that an agricultural employer is subject to the WDCA if it employs: (1) at least 3 regular employees; (2) who are paid hourly wages or salaries; and (3) who worked for the employer 35 or more hours per week for 13 consecutive weeks during the preceding 52 weeks. While Defendants are correct that employees who are paid on a piecework basis are categorically excluded, they unreasonably suggest that all other employees are covered–the language makes clear that an employee who is paid wages or a salary but does not meet the weeks and hours requirement is also not covered. The phrase "[c]overage shall apply only to such regularly employed employees" thus refers to employees who are not paid on a piecework basis *and* who meet the weeks and hours requirements. Martinez was not "such [a] regularly employed employee[]" because he had been employed only for 3 weeks and 6 days at the time of his death. Therefore, Garcia has sufficiently alleged that Martinez had no rights to recover benefits under the WDCA and was not subject to its exclusive remedy provision.

### *Intentional Tort Exception*

In Count II, Garcia pleads in the alternative a claim under the WDCA's intentional tort exception to the exclusive remedy provision. If an employee is covered by the WDCA, "[w]orker's compensation is the exclusive remedy for all on-the-job injuries, except for injuries intentionally inflicted by the employer." *Gray v. Morley*, 460 Mich. 738, 742, 596 N.W.2d 922, 925 (1999). The exclusive remedy provision, which also contains the intentional tort exception, states:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to the exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the

7

> employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

M.C.L.A. § 418.131(1).

The Michigan Supreme Court's decision in the companion cases of *Travis v. Dreis and Krump Manufacturing Co.* and *Golec v. Metal Exchange Corp.*, 453 Mich. 149, 551 N.W.2d 132 (1996), is the leading authority on the intentional tort exception. In *Travis*, the plaintiff, a novice press operator, suffered severe injuries to her hands and amputation of both her fifth fingers when the press she was using "double cycled," or operated a second time without the use of the required buttons. *Id.* at 155, 551 N.W.2d at 135. The press had been double cycling for about one month prior to that time, although maintenance employees had been making adjustments which would temporarily correct the problem for as long as two weeks but sometimes only for one or two days. *Id.* at 155, 551 N.W.2d at 135-36. The plaintiff's supervisor instructed her on using the press but neglected to tell her that it had been double cycling. *Id.* at 155, 551 N.W.2d at 135. In *Golec*, the plaintiff was slightly burned as a result of small explosion that occurred while he was loading scrap metal into a furnace. The plaintiff reported the explosion to his shift leader, indicating his belief that the explosion was caused by the presence of closed aerosol cans or wet scrap metal. *Id.* at 158, 551 N.W.2d at 137. The shift leader contacted his supervisor, who in turn told the shift leader that the plaintiff had to return to work. A short time later, the plaintiff was severely burned when a huge explosion in the furnace showered the plaintiff with molten aluminum. *Id.* at 159, 551 N.W.2d at 137.

In analyzing the intentional tort exception, the Michigan Supreme Court construed the legislature's use of the terms "deliberate act" and "specifically intended an injury" together to mean

that an employer is subject to an action for an intentional tort only if the employer "made a conscious choice to injure an employee and . . . deliberately acted or failed to act in furtherance of that intent." *Id.* at 180, 551 N.W.2d at 146. The court said that the second sentence of the exception provides a means for proving the employer's intent to injure through circumstantial evidence. *Id.* at 173, 551 N.W.2d at 143. This method of proof requires three showings: first, that the employer had "actual knowledge" that an injury would occur; second, the injury was "certain to occur"; and finally, the employer "willfully disregarded" the risk to the employee. *Id.* The Michigan Court of Appeals has summarized these elements as follows:

> (1) "Actual Knowledge"-This element of proof precludes liability based upon implied, imputed, or constructive knowledge. Actual knowledge for a corporate employer can be established by showing that a supervisory or managerial employee had "actual knowledge that an injury would follow from what the employer deliberately did or did not do."
>
> (2) "Injury certain to occur"-This element establishes an "extremely high standard" of proof that cannot be met by reliance on the laws of probability, the mere prior occurrence of a similar event, or conclusory statements of experts. Further, an employer's awareness that a dangerous condition exists is not enough. Instead, an employer must be aware that injury is certain to result from what the actor does.
>
> (3) "Willfully disregard"-This element requires proof that an employer's act or failure to act must be more than mere negligence, e.g., failing to protect someone from a foreseeable harm. Instead, an employer must, in fact, disregard actual knowledge that an injury is *certain* to occur.

*Palazzola v. Karmazin Prods. Corp.*, 223 Mich. App. 141, 149-50, 565 N.W.2d 868, 873 (1997) (quoting *Travis*).

Applying these principles, the Michigan Supreme Court concluded that the plaintiff in *Travis* failed to present sufficient circumstantial evidence of her employer's intent to injure. The court found that while the plaintiff's supervisor had actual knowledge that the press was malfunctioning, the plaintiff failed to show that the supervisor knew an injury was certain to occur. The court noted that the press double cycled only intermittently and the supervisor was willing to operate the press

9

himself, which showed that an injury was not certain. *Travis*, 453 Mich. at 182, 551 N.W.2d at 146-47. The court further noted that the press cycled so slowly that all prior operators were able to withdraw their hands in time to avoid injury. *Id.* at 182, 551 N.W.2d at 147. Finally, the court said that the supervisor did not willfully disregard a dangerous situation because he adjusted the press and felt comfortable operating it himself, and the adjustments allowed the press to run for one or two days without double cycling. *Id.* at 182-83, 551 N.W.2d at 147. The court reached a different conclusion in *Golec*. There, the court found that the plaintiff presented sufficient evidence to show that the employer had actual knowledge that water, aerosol cans, or both created a condition that could lead to an explosion. *Id.* at 184-85, 551 N.W.2d at 147-48. The court further found that the plaintiff presented sufficient evidence to allow the trier of fact to conclude that injury was certain to occur because, under the plaintiff's version of events, every load of scrap had the potential to explode. *Id.* at 186, 551 N.W.2d at 148. Finally, the court concluded that the evidence sufficed to show that the employer willfully disregarded that an injury was certain to occur because the plaintiff's evidence showed that in spite of knowledge of the earlier explosion, the employer failed to take action to correct the dangerous condition. *Id.* at 186-87, 551 N.W.2d at 148.

Defendants contend that Garcia's intentional tort claim is subject to dismissal because it is based solely upon legal conclusions and factual assumptions that fail to provide enough factual content to show that Defendants had actual knowledge that an injury was certain to occur or that Defendants willfully disregarded such knowledge. Having reviewed the first amended complaint, the Court concludes that Garcia's allegations suffice to withstand a Rule 12(b)(6) motion to dismiss because they are more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft*, 129 S Ct. at 1949. Specifically, Garcia alleges that Defendants had actual knowledge that Martinez would suffer an injury because they were aware that

10

the tanks Martinez and Perez were directed to enter were enclosed, oxygen deprived spaces–"a hazardous condition that was exacerbated due to a hazardous substance, specifically due to the presence of decaying and/or decomposing organic material, including molasses, which emitted poisonous and/or oxygen competing gases." (1st Am. Compl. ¶ 47.) Garcia further alleges that Defendants obtained their knowledge of the dangerous conditions through years of experience with storage tanks and silos on farms, from past similar incidents resulting in injuries, through warning labels on the storage tanks and on the liquid feed supplement, and the verbal complaints from Martinez and Perez that the interior of the storage tank was hot and gassy. (*Id.* ¶ 49.) Further, Garcia alleges that Defendants subjected Martinez to the dangerous condition, knowing that an injury was certain to occur, (*id.* ¶ 51), and that Defendants willfully disregarded this danger by failing to properly advise Martinez so that he could take appropriate precautions. (*Id.* ¶ 50.) The factual allegations in the instant case are similar to the facts in *Golec* because Martinez, like the plaintiff in *Golec*, informed his supervisor of the dangerous conditions but the supervisor, in disregard of the danger, instructed the employee to return to work without remedying the dangerous condition.

### *Allegations Regarding Lettinga*

Defendants contend that Counts I and II should be dismissed as against Lettinga because those counts set forth no allegations mentioning him by name. Defendants contend that Counts I and II therefore fail to state a claim against Lettinga. The Court disagrees.

Lettinga is specifically identified in the general allegations as the owner and agent of Yankee Springs who supervised Martinez and instructed him to clean the inside of the storage tanks. Although Lettinga is not mentioned specifically in Counts I and II, both counts expressly incorporate by reference the paragraphs in the general allegations section. (1st Am. Compl. ¶¶ 24, 45.)

Moreover, Garcia refers to "Defendants" in both counts, indicating that both claims are asserted against Yankee Springs and Lettinga.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion to dismiss in its entirety.

An Order consistent with this Opinion will be entered.


Dated: February 15, 2012                    /s/ Gordon J. Quist
                                         GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE